United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL JOSEPH SAYRE,

Plaintiff,

v.

GOOGLE, INC.,

Defendants.
______________________________/

No. C 19-02247 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this *pro se* antitrust action, plaintiff accuses defendant of using its monopoly power to suppress competition. Defendant moves to dismiss all claims. The motion to dismiss is **GRANTED**.

## STATEMENT

Plaintiff Paul Joseph Sayre is the owner and creator of RDevice. In 2009, Sayre filed a provisional patent on messenger technology for RDevice. In 2010, he filed a formal patent application and launched RDevice as a web and mobile messenger developed to work on defendant Google's Android mobile operating system. Sayre alleges that RDevice had many features that directly competed with Google in the communication and social space because it was one of the first messengers ever launched (Dkt. No. 58 at 2).

Google Play is the primary method for installing applications on Android devices; Google automatically blocks devices from downloading apps from any other source. RDevice is

an app designed specifically for Android smart phones and will not work on another operating system without completely reprogramming the software code. Users may install RDevice without Google Play by overriding the device security features but losing automatic updates. This may be disconcerting to some users and could expose the device to malware or hackers (Dkt. No. 1 at 6).

Sayre sought to utilize Google's mobile app distribution platform, Google Play, and Google's web search engine, Google Web, to access users for his messenger app. He alleges RDevice has been removed from Google Play numerous times and denied any attempts to reverse the decision. Additionally, RDevice does not appear in the category search results for messengers while published in Google Play and only appears near the end of the list if it is specifically searched. As a result, RDevice has one of the lowest installation records and essentially does not exist. Sayre blames this all on Google's alleged monopoly on app distribution with Google Play and Android (Dkt. No. 58 at 3).

Sayre contends that Google targeted RDevice specifically because it was one of the first messengers ever launched and included a patent application. He states that other messengers grew simply because they were found on Google Play. The value of messengers is based on user acquisition rather than revenue. Sayre speculates that RDevice would amount to $1.6 billion had it reached its full market potential, similar to the value of others in the same space (Dkt. No. 58 at 4–5).

Based on the above, Sayre alleges that Google "engaged in antitrust behavior" and seeks relief for monopolization. This claim will be construed as a claim under Section 2 of the Sherman Act because the absence of other conspiring parties makes a Section 1 claim inconceivable. He also claims a violation of Section 17200 of California's Unfair Competition Law. Sayre seeks $1.6 billion in compensatory damages for loss of capital, revenue, market value, and userbase, as well as punitive damages and injunctive relief (*id*. at 2–5).

These claims were originally filed in the United States District Court of the Eastern District of Texas, which transferred the case here. Although a prior order requested Sayre to file an amended complaint by August 14, 2019 (Dkt. No. 52), he did not file it until August 26, 2019

(Dkt. No. 58). Google now moves to dismiss the amended complaint. A hearing was calendared on November 7, 2019. Sayre did not appear when the case was called. As a courtesy, the hearing was then moved to the end of the calendar, but Sayre never appeared. Google agreed to submit on the papers. This order follows full briefing (Dkt. Nos. 69, 73, 75).

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007), and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. *Iqbal*, 556 U.S. at 678–79. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (citation and quotation omitted). Nor is it enough that the complaint is "factually neutral"; rather, it must be "factually suggestive." *Twombly*, 550 U.S. at 557 n.5.

**1. MONOPOLY MAINTENANCE UNDER SECTION 2 OF THE SHERMAN ACT.**

Section 2 of the Sherman Act prohibits monopolization, attempted monopolization, and conspiracies to monopolize. More specifically, Section 2 provides that anyone who attempts "to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2. To successfully claim a Section 2 violation, Sayre must establish: (1) antitrust injury; (2) possession of monopoly power in a relevant market; and (3) willful acquisition or maintenance of that power. *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 543 (9th Cir. 1983).

**A. Sayre Does Not Properly Allege an Antitrust Injury.**

Our court of appeals holds that antitrust injury is "injury to the market or to competition in general, not merely injury to individuals . . . ." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802,



United States District Court
For the Northern District of California

812 (9th Cir. 1988). "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Sayre alleges that Google Play and Google Web search results limited or hid RDevice from consumer discovery. He then conclusively alleges that Google's conduct resulted in RDevice losing access to the majority of cell phone users in the global market (Dkt. No. 73 at 3). These allegations are not enough to support an antitrust claim because they only state injury to RDevice and no other competitor. *Ibid*. To the contrary, Sayre admits that "[o]ther messengers have made substantial growth simply because they were found in Google Play. . . ." (Dkt. No. 58 at 4). Sayre does not allege that Google's conduct harmed competition or consumers, but instead that it only harmed RDevice. Sayre, therefore, does not properly allege antitrust injury and fails to state a claim meeting the first element of a Section 2 violation.

**B. Sayre Does Not Properly Allege that Google Possessed Monopoly Power in Any Relevant Market.**

Sayre bears the burden of showing that Google's conduct produces significant anticompetitive effects within a relevant market. Although the validity of a relevant market itself is typically a factual element, our court of appeals holds that failure to identify a relevant market is a proper ground for dismissing Section 2 claims. Sayre, therefore, must facially identify a relevant market to survive dismissal. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1063 (9th Cir. 2001).

A "relevant market" encompasses notions of geography along with product use, quality, and description. The geographic market extends to the area of effective competition where there are alternative sources of supply based on factors including delivery limitations or cost. The product market includes interchangeable goods or services and cross elasticity of demand. *See Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979).

Sayre does not properly allege a relevant geographic market. He broadly states that RDevice competed with Google "on a worldwide scale" because RDevice worked on the Android platform (Dkt. No. 73 at 5). This does not consider the delivery limitations that RDevice may face in countries or regions with import and export restrictions. It is implausible

for Sayre to assert that there are no regulatory, legal, technological, or practical restraints for RDevice to compete in the United States, as opposed to other countries. Because plaintiff fails to address such impediments, he does not allege a relevant geographic market.

Next, Sayre must allege a product name, feature, or market share to indicate a relevant product market. He conclusively states that Google controls 81% of the cell phone market and limiting its platform to RDevice resulted in a loss of "over 81% of cell phone consumers around the world and 100% of RDevice's userbase . . . ." (Dkt. No. 73 at 6). Now that Sayre vaguely identifies the global cell phone market as the relevant product market where Google competes with RDevice, he must allege that Google has a dominant share and excludes competition. *Mercy-Peninsula Ambulance, Inc. v. CTY. of San Mateo*, 791 F.2d 755, 759 (9th Cir. 1986).

Instead, Sayre alleges that Google is the subject of governmental investigations by the United States Department of Justice and 48 states (Dkt. No. 73 at 5). A mere government inquiry does not establish that Google controlled prices or excluded competition in a relevant market. To the contrary, Sayre states that messenger apps that competed with RDevice substantially grew simply because they were found on Google Play (Dkt. No. 1 at 5). As a result, Sayre fails to plausibly allege that Google possesses monopoly power in a relevant market and, therefore, does not meet the second element required to claim a Section 2 violation.

### C. Does Sayre Plausibly Allege that Google Engaged in Anticompetitive Conduct?

Willful acquisition or maintenance of monopoly power means that the monopolist must have "engaged in willful acts directed at establishing or retaining its monopoly as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *California Computer Products v. International Business Machines Corp.*, 613 F.2d 727, 735 (9th Cir. 1979) (internal quotations omitted) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

The Supreme Court has held that the Sherman Act does not restrict the long-recognized right of a business to freely exercise its independent discretion as to the parties with whom it elects to deal. *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398,

United States District Court
For the Northern District of California

408 (2004). Anticompetitive conduct involves electing to forgo short-run benefits because of an interest in reducing competition in the long run by harming smaller competitors. *Ibid*.

Sayre responds to this by relying on an "essential facility" theory of liability. "A facility that is controlled by a single firm will be considered 'essential' only if control of the facility carries with it the power to eliminate competition in the downstream market." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991). Sayre, however, concedes that Google Play is not essential because RDevice could reach consumers by employing potential alternative channels of distribution (Dkt. No. 73 at 3). This order need not reach this issue in light of the earlier points made herein. Because Sayre does not meet the first two elements required to claim relief under Section 2, the motion to dismiss his antitrust claim under the Sherman Act is **GRANTED**.

**2. VIOLATION OF SECTION 17200.**

To state a claim for unfair competition under Section 17200 of the California Business and Professions Code, Sayre must allege that Google engaged in an "unlawful, unfair or fraudulent business act or practice." The statute is violated when a defendant's conduct violates any of the foregoing elements. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Our court of appeals holds that any finding of unfairness to competitors under Section 17200 "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).

Sayre never alleges in either his complaint or amended complaint that Google engaged in unlawful, unfair or fraudulent business practices. The only allegation he makes to support his allegation that Google violated Section 17200 is that this claim is "[b]ased on the statements made in Cause of Action 1-Antitrust" (Dkt. No. 58 at 5). In his opposition, however, Sayre contends that Google acted unlawfully and unfairly (Dkt. No. 73 at 7). Although new arguments should not be considered in this posture, all allegations were still reviewed for the purposes of this order.

*First*, Sayre fails to allege that Google's conduct was unlawful because his argument is still premised on the alleged violation of the Sherman Act and that claim is legally deficient.

*Second*, Sayre fails to allege that Google's conduct was unfair because he continues to focus on the harm he experienced as an individual rather than harm to competition or consumers. Because Sayre does not sufficiently meet the elements for a Section 17200 violation, the motion to dismiss this claim is **GRANTED**.

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is **GRANTED**. In light of Sayre's failure to prosecute, his failures to appear, and for reasons mentioned above, leave to amend is futile and this action is **DISMISSED WITH PREJUDICE**. Judgment shall be entered separately.

**IT IS SO ORDERED.**

Dated: November 14, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California